IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| PAUL MICHAEL MOORE *et al.*, | Case No. 3:21-cv-00599-SB |
| Plaintiffs, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| OREGON DEPARTMENT OF CORRECTIONS *et al.*, | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Paul Michael Moore ("Moore") is a self-represented litigant in the custody of the Oregon Department of Corrections ("ODOC"). This matter comes before the Court on Plaintiff's Motion for Quia Timet Injunction Preliminary Injunctive Relief (ECF No. 21),[1] Plaintiff's Motion to Enforce Injunctive Relief and Transfer Back to Minimum Facility Housing (ECF No. 32), and Plaintiff's Motion for Order to Transfer (ECF No. 33).[2] In each of the motions, Moore

---

[1] The Court interprets Plaintiff's Motion for Quia Timet Injunction Preliminary Injunctive Relief as a Motion for Preliminary Injunction.

[2] After the parties fully briefed Plaintiff's Motion for Preliminary Injunction, Moore filed two additional motions seeking the same relief. The Court addresses all of Moore's motions herein.

PAGE 1 – FINDINGS AND RECOMMENDATION

requests that the Court order ODOC to transfer him to a minimum security facility. Moore requested oral argument on the motions but the Court finds the matter suitable for disposition without oral argument. *See* LR 7-1(d)(1). For the reasons that follow, this Court recommends that the district judge deny Moore's motions.

## BACKGROUND

Moore is currently housed at Snake River Correctional Institution ("SRCI"), a multi-security facility. On February 2, 2021, Moore, along with three other adults in custody ("AIC") filed a civil action in Multnomah County Circuit Court against ODOC alleging constitutional violations relating to the COVID-19 pandemic. At the time of filing, Moore was housed at Powder River Correctional Institution ("PRCI"), a minimum security facility.

On April 21, 2021, ODOC removed this case to federal court pursuant to 28 U.S.C. § 1331. (ECF No. 1.) On June 1, 2021, the Court granted ODOC's motion to stay this case pending resolution of class certification in a related putative class action, *Maney et al. v. Brown et al.*, 6:20-cv-00570-SB. (ECF No. 4; ECF No. 15.) On July 22, 2021, Moore filed a Motion for Preliminary Injunction requesting that this Court order ODOC to transfer Moore back to a minimum security facility. (ECF No. 21.) On July 23, 2021, the Court lifted the stay for the limited purpose of litigating Moore's motion. (ECF No. 22.)

Moore alleges in his preliminary injunction motion that ODOC transferred him from his minimum security housing at PRCI to SRCI, and that staff and officials are targeting, harassing, and threatening him, damaging his personal property, tossing his cell, holding his legal mail, and delaying his approved transfer back to a minimum security facility, all in retaliation for Moore's filing of this case. (*See* ECF No. 21.)

///

///

PAGE 2 – FINDINGS AND RECOMMENDATION

## DISCUSSION

I. **LEGAL STANDARDS**

   A. **Exhaustion of Administrative Remedies**

This case is subject to the Prison Litigation Reform Act ("PLRA"), which requires AICs to exhaust available administrative remedies prior to filing a . . . lawsuit challenging prison conditions." *Draper v. Rosario*, 836 F.3d 1072, 1078 (9th Cir. 2016) (citations omitted). In *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc), the Ninth Circuit held that the defendant bears the burden of proving that an administrative remedy was available to the AIC and that he failed to exhaust such remedy, because non-exhaustion is an affirmative defense. *Id.* at 1172. "Once the defendant has carried that burden, the prisoner has the burden of production." *Id.* "That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

"The doctrine of exhaustion of administrative remedies is well established . . . and provides that no one is entitled to judicial relief for a supposed threat or injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

   B. **Preliminary Injunction**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008) (citations omitted). The elements of the test are

PAGE 3 – FINDINGS AND RECOMMENDATION

"balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d. 1127, 1131 (9th Cir. 2011) ("For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits."). "When the government is a party, [the] last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).[3]

The PLRA imposes additional restrictions on a court's ability to grant injunctive relief. Any such "[1] relief must be narrowly drawn, [2] extend no further than necessary to correct the harm the court finds requires preliminary relief, and [3] be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). The PLRA requires that courts "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity[.]" *Id.*

### C.    Mandatory Injunction

A "mandatory injunction orders a responsible party to take action" and "is particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co*., 571 F.3d 873, 879 (9th

---

[3] The Ninth Circuit also provides an alternative preliminary injunctive relief test: the "serious questions" test. *Alliance for the Wild Rockies*, 632 F.3d at 1131-32. Under this test, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132. Under this test, a court may grant a preliminary injunction "if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156 (D. Or. 2018) (quoting *M.R. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012)). However, where, as here, Moore seeks a mandatory injunction, courts decline to apply the "serious questions" test. *See P.P. v. Compton Unified Sch. Dist*., 135 F. Supp. 3d 1126, 1135 (C.D. Cal. 2015) ("Plaintiffs seek a mandatory injunction, the Court declines to interpret the 'serious questions' standard for purposes of the Motion as inconsistent with the Ninth Circuit's guidance that a mandatory injunction not issue in 'doubtful cases' and not be granted 'unless the facts and law clearly favor the moving party.'"); *see also Guerra v W. L.A. College*, No. CV 16-6796-MWF (KSx), 2016 WL 11619872, at *4 (C.D. Cal. Nov. 2, 2016) (same).

Cir. 2009) (simplified). The "already high standard for granting a TRO or preliminary injunction is further heightened when the type of injunction sought is a 'mandatory injunction.'" *Innovation Law Lab*, 310 F. Supp. 3d at 1156 (citing *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015)). A plaintiff requesting a "mandatory injunction" must "establish that the law and facts clearly favor her position, not simply that she is likely to succeed." *Id.* (quoting *Garcia*, 786 F.3d at 740).

II.     ANALYSIS

Moore asserts that his transfer to SRCI and ODOC's failure to return him to a minimum security facility is in retaliation for "exercising his legal right(s) to file Civil Litigation." (ECF No. 21.) ODOC responds by explaining in a sworn declaration that the reason for Moore's transfer from PRCI to SRCI was that AICs at PRCI had made threats against Moore and ODOC transferred Moore for his own safety, that ODOC has already approved Moore to return to a minimum security facility, and that the delay in transport is the result of a long list of AICs awaiting an appropriate opening at a minimum security facility. (Def.'s Resp. to Pl.'s Mot. for Prelim. Inj. ("Def.'s Resp.") at 9.) ODOC also argues that this Court lacks subject matter jurisdiction over Moore's retaliation claims because Moore failed to exhaust his administrative remedies. (*Id.* at 5-7.)

A.     **Failure to Exhaust Administrative Remedies**

The Court finds that ODOC has met its initial burden of demonstrating that administrative remedies were generally available to Moore to grieve his complaints. (*See* Decl. of James Taylor ("Taylor Decl.") ¶¶ 5-6.)

Defendant has also met its burden of demonstrating that Moore failed to exhaust his available administrative remedies with respect to his retaliation claims. Specifically, ODOC submitted evidence that at the time of filing, Moore had not filed any grievances relating to

PAGE 5 – FINDINGS AND RECOMMENDATION

ODOC's delay in returning him to a minimum security facility, the subject of his motions. (Taylor Decl. ¶¶ 3-4, Attach. 1.) Thereafter, it appears that Moore submitted a grievance on or about August 4, 2021, directed to "Captain Parks," grieving the issue of his delayed transfer to a minimum security facility. (Pl.'s Mot. For Order to Transfer, ECF 33.) The response on the grievance form states, "you are on the list to go to minimum right now they are mostly taking workers with outside clearance." *Id*. Moore does not allege that he appealed this grievance.

Previously, Moore filed a grievance on March 10, 2021, asserting that his transfer from PRCI to SRCI was retaliatory. (Decl. of Debi Geddes ("Geddes Decl.") ¶¶ 5-7.) However, Moore's grievance was not received within fourteen days of the date of the incident as required under OAR 291-109-0205(1), and therefore ODOC denied the grievance. (Geddes Decl. ¶¶ 6-8.) Moore also filed a grievance claiming that prison officials were deliberately delaying his legal mail. (Taylor Decl. ¶¶ 3-4, Attach. 1.) That grievance was returned to Moore for correction. (*Id.*) Finally, Moore recently filed a grievance alleging that he was charged double postage on an envelope. (*Id.*) Moore was informed that this grievance was filed incorrectly. (*Id.*) Moore did not resubmit or appeal any of these grievances (*id.*), and therefore he failed to exhaust his administrative remedies.

ODOC has met its burden of demonstrating that the grievance process was available to Moore and that he failed to exhaust any grievances related to his retaliation claims, and therefore the burden shifts to Moore to demonstrate that the grievance process was effectively unavailable to him. In his reply, Moore does not identify any grievances or appeals missing from ODOC's declarations, nor does Moore claim he failed to file grievances out of fear of further retaliation. (*See* Reply to Def.'s Resp. to Pl.'s Mot. for Prelim. Inj. ("Pl.'s Reply").) Rather, he argues that he exhausted his administrative remedies because he or his "institutional counselor" have

PAGE 6 – FINDINGS AND RECOMMENDATION

repeatedly communicated with ODOC officials regarding his approved—but delayed—transfer to a minimum security facility.⁴ (*Id.* at 1.) However, it does not appear that these communications were conducted in connection with the mandatory grievance procedures, and therefore Moore has not properly exhausted his claims. *See Woodford*, 548 U.S. at 90-91 (holding that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings").

For these reasons, the Court finds that the grievance process was available to Moore, but Moore did not exhaust any grievances related to his retaliation claims. Accordingly, the Court recommends that the district judge deny Moore's motions for lack of subject matter jurisdiction.

**B.   Preliminary Injunction**

If the district judge disagrees that Moore failed to exhaust his administrative remedies, or if Moore exhausts his August 2021 grievance relating to his delayed transfer, the district judge should nevertheless deny Moore's motions for injunctive relief.

The Court must evaluate the four *Winter* factors to determine if Plaintiff has established the need for preliminary injunctive relief: (1) likelihood of success on the merits, (2) irreparable harm in the absence of preliminary relief, (3) the balance of equities, and (4) the public interest. *See Winter*, 555 U.S. at 20.

First, the Court finds that Moore is unlikely to succeed on the merits of his retaliation claims.⁵ He alleges that ODOC retaliated against him in violation of his First Amendment rights

---

⁴ Although Moore claims he has been "denied transfer," he acknowledges the transfer has been approved but delayed. (Pl.'s Reply at 2.)

⁵ As a preliminary matter, Moore's retaliation claims are not properly before the Court because he did not plead these claims in his original complaint and he has not filed an amended

PAGE 7 – FINDINGS AND RECOMMENDATION

after he filed this case, which is a cognizable claim. *See Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) ("Of fundamental import to prisoners are their First Amendment right to file prison grievances and to pursue civil litigation in the courts" and "because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution . . . .") (simplified). However, Moore must prove five elements in support of his retaliation claims: (1) that a state actor took some adverse action against him (2) because of (3) his protected conduct, and that such action (4) chilled his exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Id*. at 567-68 (citation omitted).

The Court finds that Moore is unlikely to succeed on the merits because the evidence, even when viewed in the light most favorable to Moore, supports a conclusion that his transfer to SRCI and his delayed return to minimum security reasonably advanced legitimate correctional goals. Specifically, Moore was initially transferred to SRCI due to threats against him from AICs at PRCI (Decl. of Kim Rowley ¶¶ 3-4), which serves the legitimate correctional goal of protecting Moore's safety. Furthermore, ODOC has already approved Moore's return to a minimum security facility but the delay in his return is the result of several legitimate factors, including challenges presented by COVID-19, the closure of a minimum security facility, and 650 AICs on the same waiting list. (Decl. of Greg Jones ("Jones Decl.") ¶¶ 3-4; Decl. of Jeff Wise ("Wise Decl.") ¶¶ 3-5.) Other AICs may transfer ahead of Moore because the minimum security facilities currently need AICs authorized to work on firefighting crews, and Moore is not so authorized. (Jones Decl. ¶¶ 5-8.) In addition, the transfer priority is impacted by Moore's classification as the higher (more secure) of the two classifications eligible for minimum security

---

complaint. Nevertheless, the Court addresses the merits because this action has been stayed and therefore Moore has not had the ability to file an amended complaint.

PAGE 8 – FINDINGS AND RECOMMENDATION

housing, and in light of the length of time remaining on his sentence. (Wise Decl. ¶ 5.) Accordingly, Moore has not established a likelihood of success on the merits, nor that the law and facts clearly favor his position here. *See Garcia*, 786 F.3d at 740 ("Because [plaintiff] seeks a mandatory injunction, she must establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed.").

Second, Moore has also failed to demonstrate that irreparable injury is likely in the absence of an injunction. Although he alleges damage to his personal property, money damages could compensate him for any such loss if he can prove his retaliation claims. *Smith v. Miles*, No. 2:19-cv-00929-YY, 2021 WL 519892, *5 (D. Or. Feb. 11, 2021) ("[T]he remedy for plaintiff's claim of past harm in the form of retaliation is not injunctive relief; should plaintiff prevail on the merits of his retaliation claim, his remedy will be money damages.") (citations omitted). Moore has not demonstrated that any irreparable injury will result from waiting for his already approved return to minimum security.

Finally, the balance of the equities and public interest tip in ODOC's favor here. *See Turner v. Safley*, 482 U.S. 78, 84-85 (1987) (explaining that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government" and that "separation of powers concerns counsel a policy of judicial restraint"); *Mecham v. Fano*, 427 U.S. 215, 228-229 (1976) (warning against court involvement in "the day-to-day functioning of state prisons and involv[ing] the judiciary in issues and discretionary decisions that are not the business of federal judges"); *see also* 18 U.S.C. § 3626(a)(2) (requiring that courts "give substantial weight to any adverse impact on public safety

or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity").

Weighing the *Winter* factors, the Court concludes that preliminary injunctive relief is not warranted here. *See Winter*, 555 U.S. at 20 (explaining that a party seeking preliminary injunctive relief must establish all four factors).

## CONCLUSION

For the reasons stated, the Court recommends that the district judge DENY Plaintiff's Motion for Quia Timet Injunction Preliminary Injunctive Relief (ECF No. 21), Plaintiff's Motion to Enforce Injunctive Relief and Transfer Back to Minimum Facility Housing (ECF No. 32), and Plaintiff's Motion for Order to Transfer (ECF No. 33). Once the district judge enters a ruling on these Findings and Recommendation, the Court will reimpose the stay of this case.

## SCHEDULING ORDER

The Court will refer its Findings and Recommendation to a district judge. Objections, if any, are due within fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 28th day of September 2021.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge